**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

JONATHAN FARBER,

Plaintiff,

v.

THE WALT DISNEY COMPANY, *et al*.,

Defendants.

Case No.: 1:24-cv-00391

**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS**

ORAL ARGUMENT REQUESTED

**McDERMOTT WILL & EMERY LLP**

Kerry Alan Scanlon (admitted *pro hac vice*)
David Beach
500 North Capitol Street, N.W.
Washington, DC 20001
Tel: (202) 756-8696

Dated: April 24, 2024

*Attorneys for Defendants*

# TABLE OF CONTENTS

**Page**


PRELIMINARY STATEMENT .......... 1

STATEMENT OF FACTS .......... 2

ARGUMENT .......... 4

I. PLAINTIFF'S COMPLAINT DOES NOT STATE A PLAUSIBLE CLAIM OF RELIGIOUS DISCRIMINATION .......... 4

A. A Stray Remark Made Three Years before Plaintiff's Employment Is Insufficient As a Matter of Law To Establish Discriminatory Intent .......... 4

B. Absent Any Other Allegations of Discriminatory Intent, Plaintiff Cannot Plausibly Allege That the Challenged Actions Were Based on His Religion .......... 6

II. PLAINTIFF HAS NOT ALLEGED A PLAUSIBLE CLAIM OF RETALIATION .......... 9

III. THE COURT SHOULD DISMISS THE WALT DISNEY COMPANY BECAUSE IT DOES NOT HAVE "A SINGLE EMPLOYER" RELATIONSHIP WITH THE THEATRICAL GROUP THAT EMPLOYED PLAINTIFF .......... 11

CONCLUSION .......... 13

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Alhaj v. New York City Health & Hosps. Corp.*,
177 N.Y.S.3d 433 (N.Y. Sup. Ct. 2022) ....................5

*Arculeo v. On-Site Sales & Mktg., LLC*,
425 F.3d 193 (2d Cir. 2005) ....................11

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009) ....................3, 4, 9

*Bell Atl. Corp. v. Twombly*,
550 U.S. 544 (2007) ....................3, 4, 9

*Bermudez v. City of New York*,
783 F. Supp. 2d 560 (S.D.N.Y. 2011) ....................6

*Brown v. Daikin Am. Inc.*,
756 F.3d 219 (2d Cir. 2014) ....................12

*Daniel v. City of New York*,
2021 WL 5988305 (S.D.N.Y. Dec. 16, 2021) ....................5

*Dixon v. Int'l Fed'n of Accountants*,
416 F. App'x 107 (2d Cir. 2011) ....................11

*Duff v. Pristine Servs., Inc.*,
2021 WL 663981 (S.D.N.Y. Feb. 19, 2021) ....................5

*Fattoruso v. Hilton Grand Vacations Co.*,
873 F. Supp. 2d 569 (S.D.N.Y. 2012) ....................10

*Henry v. Wyeth Pharms., Inc.*,
616 F.3d 134 (2d Cir. 2010) ....................5

*Lettieri v. Anti-Defamation League*,
2023 WL 5152447 (S.D.N.Y. Aug. 10, 2023) ....................4

*Lichtenstein v. Triarc Cos.*,
2004 WL 1087263 (S.D.N.Y. May 14, 2004) ....................6

*Mihalik v. Credit Agricole Cheuvreux N. Am., Inc.*,
715 F.3d 102 (2d Cir. 2013) ....................4, 9

*Moore v. Verizon*,
2016 WL 825001 (S.D.N.Y. Feb. 5, 2016) .......... 5

*Paupaw-Myrie v. Mount Vernon City Sch. Dist.*,
653 F. Supp. 3d 80 (S.D.N.Y. 2023) .......... 10

*Rahman v. Limani 51, LLC*,
2022 WL 3927814 (S.D.N.Y. Aug. 31, 2022) .......... 12

*Richards v. Dep't of Education of City of New York*,
2022 WL 329226 (S.D.N.Y. Feb. 2, 2022) .......... 8

*Shiflett v. Scores Holding Co.*,
601 F. App'x 28 (2d Cir. 2015) .......... 12

*Shultz v. Congregation Shearith Israel of City of New York*,
867 F.3d 298 (2d Cir. 2017) .......... 9

*Silverman v. City of New York*,
216 F. Supp. 2d 108 (E.D.N.Y. 2002), *aff'd*, 64 F. App'x 799 (2d Cir. 2003) .......... 9

*Smith v. New York & Presbyterian Hosp.*,
440 F. Supp. 3d 303 (S.D.N.Y. 2020) .......... 11

*Staten v. City of New York*,
2015 WL 4461688 (S.D.N.Y. July 20, 2015), *aff'd*, 653 F. App'x 78 (2d Cir. 2016) .......... 7

*Syeed v. Bloomberg L.P.*,
568 F. Supp. 3d 314 (S.D.N.Y. 2021) .......... 4, 7

*Vega v. Hempstead Union Free Sch. Dist.*,
801 F.3d 72 (2d Cir. 2015) .......... 4

*Vinokur v. Sovereign Bank*,
701 F. Supp. 2d 276 (E.D.N.Y. 2010) .......... 10, 11

*Weiss v. Starr Rest. Org., LP*,
2021 WL 3099895 (S.D.N.Y. July 21, 2021) .......... 12

*Wilson v. JP Morgan Chase Bank, N.A.*,
2021 WL 918770 (S.D.N.Y. Mar. 10, 2021) .......... 7, 8

**Statutes**

N.Y.C. Code § 8-502(d) .......... 6

**Other Authorities**

Fed. R. Civ. P. 12(b)(6)..........................................................................................................4

**PRELIMINARY STATEMENT**

This New York City Human Rights Law ("NYCHRL") discrimination case for religious discrimination and retaliation is entirely predicated on a 2014 "retweet" of a Twitter comment posted three years *before* defendant Buena Vista Theatrical Group Ltd. d/b/a Disney Theatrical Group ("Theatrical Group") hired plaintiff Jonathan Farber as a Labor Relations Coordinator in 2017.

Plaintiff's claims for religious discrimination and retaliation fail for any one of the following reasons. First, the alleged retweet is a single "stray remark" that cannot create an inference of discrimination under the NYCHRL sufficient to defeat a motion to dismiss, particularly because the remark was not about the plaintiff, was not related to workplace issues or a specific employment decision, and was made long before the plaintiff started working at the Theatrical Group. Courts have long held that discriminatory or facially offensive stray remarks cannot by themselves establish a *prima facie* case of discriminatory intent, even if they are made by a manager with the authority to impact the terms and conditions of plaintiff's employment.

Second, plaintiff fails to allege a single fact occurring *during his employment* at the Theatrical Group that could circumstantially support a claim of purposeful discrimination or retaliation. For example, plaintiff's vague and conclusory allegations are insufficient for the Court to plausibly infer that the employee who retweeted the alleged offensive comment was involved in any of the alleged adverse employment actions plaintiff claims were motivated by religious animus or that were in retaliation for plaintiff's April 2020 complaint about the 2014 retweet.[1] And plaintiff's vague and conclusory allegation that the alleged decision makers

[1] While plaintiff alleges that he "discovered that Varin played a meaningful role" in denying the promotion, his complaint is devoid of any facts about what the role was or why it was meaningful. Compl. ¶ 26.

resented plaintiff for complaining about the retweet is legally insufficient to state a plausible claim of either religious discrimination or retaliation.

Finally, there is no temporal proximity between plaintiff's April 2020 Complaint and the allegedly adverse September 2021 compensation decision or his September 2023 termination. New York courts require a much shorter time period between the protected activity and the alleged adverse action than the 17 months, much less 41 months, that transpired in this case. And without the required temporal proximity, plaintiff cannot establish the required element of causation and his retaliation claim fails as a matter of law and must be dismissed.

In sum, plaintiff has failed to allege a single fact from which it can be plausibly inferred that the challenged actions were taken at least in part *because of* religious animus or in retaliation for making a complaint about a stray comment that was nevertheless taken seriously and thoroughly investigated in accordance with company policy. Accordingly, the Court should grant defendants' motion in its entirety and dismiss the Complaint.

**STATEMENT OF FACTS**[2]

In January 2020, plaintiff was denied a promotion he was assured he would get. Compl. ¶ 24. Three months later, plaintiff was furloughed when Broadway shut down because of the COVID 19 pandemic. *Id.* ¶ 25. Thereafter, plaintiff discovered that Marie-Pierre Varin, the then Director of Human Resources for the Theatrical Group, had retweeted a joke with a false stereotype in 2014.[3] *Id.* ¶ 26. Based on that retweet, plaintiff, who claims he is "proudly and openly Jewish," complained to the Theatrical Group in April 2020 that Ms. Varin blocked his

---

[2] For purposes of this motion to dismiss only, defendants assume that the facts alleged in the Complaint are true.

[3] The original tweet that was retweeted read: "Why does 'Jesus save'? Cuz he's a Jew and loves coupons :)." *See id.* ¶ 3.

promotion and placed him in the first – but certainly not the last – group of employees to be furloughed as a result of the COVID 19 lockdown because she was antisemitic. *Id.* ¶¶ 2, 27-29.

Plaintiff's furlough ended in June 2021 – when it appeared that Broadway would soon be reopening – at which point Employee Relations immediately investigated his complaint. *Id.* ¶ 34. At the conclusion of that investigation, and notwithstanding Ms. Varin's poor exercise of judgment in retweeting the joke, Employee Relations found that Ms. Varin "did not exhibit any evidence of antisemitism or bias against [plaintiff]." *Id.* ¶ 36.

Soon after he returned from furlough, plaintiff was promoted to the position he sought the year before. *Id.* ¶¶ 43-44. Believing that his $85,000 annual compensation was too low, plaintiff immediately requested a salary audit. *Id.* ¶ 44. As a result of that audit, plaintiff's salary was immediately increased to $116,000 annually. *Id.* ¶ 45.

Two years later, Plaintiff alleges that he was terminated on September 5, 2023, after the Theatrical Group determined that he had shared confidential information about ongoing labor negotiations with his former supervisor who no longer worked at the Theatrical Group. *Id.* ¶ 49. Plaintiff denies that he disclosed this confidential information and instead claims that his termination was retaliatory because Ms. Varin – who longer worked for the Theatrical Group – was a trusted ally of its President and the Theatrical Group's leaders "resented" plaintiff for complaining about Ms. Varin 41 months before he was terminated. *Id.*

Plaintiff filed this Complaint on January 18, 2024, nearly 10 years after the retweet and more than four years after he complained internally about that retweet.

## LEGAL STANDARD

To survive a motion to dismiss under *Bell Atl. Corp. v. Twombly,* 550 U.S. 544 (2007) and *Ashcroft v. Iqbal*, 556 U.S. 662 (2009), a complaint must plead "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. A claim is only facially

plausible "when the plaintiff pleads *factual content* that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged . . . but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678 (emphasis added). In other words, a complaint "must at a minimum assert *nonconclusory factual matter* sufficient to nudge its claims across the line from conceivable to plausible to proceed." *Vega v. Hempstead Union Free Sch. Dist*., 801 F.3d 72, 89 (2d Cir. 2015) (*quoting Iqbal*, 556 U.S. at 680) (internal quotation marks removed) (emphasis added). It is well settled that these pleading requirements established in *Twombly* and *Iqbal* apply to discrimination and retaliation claims asserted under the NYCHRL. *See Lettieri v. Anti-Defamation League*, 2023 WL 5152447, at *4, *11, *12 (S.D.N.Y. Aug. 10, 2023). As set forth below, Plaintiff's complaint fails to allege the factual content required to state a claim under Fed. R. Civ. P. 12(b)(6).

## ARGUMENT

### I. PLAINTIFF'S COMPLAINT DOES NOT STATE A PLAUSIBLE CLAIM OF RELIGIOUS DISCRIMINATION

#### A. A Stray Remark Made Three Years before Plaintiff's Employment Is Insufficient As a Matter of Law To Establish Discriminatory Intent

The "nonconclusory factual matter" *Iqbal* requires for NYCHRL discrimination claims must be specific enough to make a plausible showing that the plaintiff was treated "less well" than other employees *because of* discriminatory intent. *Mihalik v. Credit Agricole Cheuvreux N. Am., Inc*., 715 F.3d 102, 110 (2d Cir. 2013). The Second Circuit has cautioned that the NYCHRL is not a "general civility code" and that the "plaintiff still bears the burden of showing that the conduct was caused by a discriminatory motive." *Id.*; see also *Syeed v. Bloomberg L.P.,* 568 F. Supp. 3d 314, 321 (S.D.N.Y. 2021). The factual allegations here fail to satisfy the

pleading standard because Plaintiff has not—and cannot—allege any facts that make a plausible showing that defendants' alleged conduct was religiously motivated.

In determining whether a remark is probative of discriminatory intent, the Second Circuit considers the following factors: "(1) who made the remark (i.e., a decision-maker, a supervisor, or a low-level co-worker); (2) when the remark was made in relation to the employment decision at issue; (3) the content of the remark (i.e., whether a reasonable juror could view the remark as discriminatory); and (4) the context in which the remark was made (i.e., whether it was related to the decision-making process)." *Henry v. Wyeth Pharms., Inc.*, 616 F.3d 134, 149 (2d Cir. 2010); *see also Alhaj v. N.Y.C. Health & Hosps. Corp.*, 177 N.Y.S.3d 433, 453 (N.Y. Sup. Ct. 2022).

Applying these factors to the 2014 retweet demonstrates that no plausible inference could be made that plaintiff's challenged actions resulted from religious bias, as the critical second and fourth factors are not satisfied at all. Indeed, numerous courts have held that a stray remark, without more, is insufficient to establish discriminatory intent under the NYCHRL. *See*, *e.g.*, *Daniel v. City of New York*, 2021 WL 5988305, at *8 (S.D.N.Y. Dec. 16, 2021) (dismissing plaintiff's discrimination claims even though his supervisor stated that "he wished not to supervise the lazy and troublesome Africans[,] especially [the plaintiff] " because the plaintiff did not allege "that these remarks were made, in any way, in conjunction with" the alleged adverse action); *Duff v. Pristine Servs., Inc.*, 2021 WL 663981, at *6, *7 (S.D.N.Y. Feb. 19, 2021) (granting motion to dismiss and holding that a supervisor's comment "that he does not understand why African-Americans attempt to desensitize the word 'N' word by using the word amongst each other" was insufficient on its own to establish an inference of discrimination).

Moreover, plaintiff cannot show a nexus between the retweet and any alleged adverse employment action because it was not made about the plaintiff and did not arise in the context of his employment or anyone else's employment. *See Moore v. Verizon*, 2016 WL 825001, at *8,

*9 (S.D.N.Y. Feb. 5, 2016) (granting motion to dismiss plaintiff's ADEA, NYSHRL and NYCHRL claims because a supervisor's negative comments about plaintiff's age were made nearly a year prior to her termination and were not alleged to have arisen in the context of her termination); *Lichtenstein v. Triarc Cos.*, 2004 WL 1087263, at *4, *5 (S.D.N.Y. May 14, 2004) (allegations that plaintiff's supervisor made what she characterized as anti-Semitic remarks—including "Why are Jews so cheap?"—did not support an inference that plaintiff's termination resulted from religious bias given that all the remarks were made more than a year prior to her termination).

The complaint not only fails to draw any connection between the 2014 retweet and the employment decisions that occurred years later when Ms. Varin no longer worked at the Theatrical Group (Compl. ¶ 7), but it is also devoid of *any* factual allegations of religious animus towards Jewish employees during the six years plaintiff was employed with the Theatrical Group. Because the retweet does not give rise to a plausible inference of discriminatory animus, plaintiff's religious discrimination claim which entirely depends on that retweet must fail for this reason alone.

### B. Absent Any Other Allegations of Discriminatory Intent, Plaintiff Cannot Plausibly Allege That the Challenged Actions Were Based on His Religion

#### 1. Plaintiff's Promotion Claim Is Time Barred

Plaintiff's claims that he was not promoted "in 2019 into 2020" due to his religion is time-barred because he did not file his Complaint until January 18, 2024. N.Y.C. Code § 8-502(d) (three-year statute of limitations period for NYCHRL claims). As a result, plaintiff's failure-to-promote claim is clearly outside of the limitations period and should be dismissed as a matter of law. *See Bermudez v. City of New York*, 783 F. Supp. 2d 560, 608 (S.D.N.Y. 2011) (granting motion to dismiss discrimination claim under the NYCHRL because defendant's

conduct occurred outside of the three-year statute of limitations period).

Even if Plaintiff's failure to promote claim is not time barred, it nevertheless fails because Plaintiff has not plausibly alleged that he sought an available position for which he was qualified and was turned down on account of the fact he is Jewish. *See Staten v. City of New York*, 2015 WL 4461688, at *11 (S.D.N.Y. July 20, 2015), *aff'd*, 653 F. App'x 78 (2d Cir. 2016).[4] Satisfying this requirement entails closely examining the description, location and availability of the position sought, the candidates for promotion, and the circumstances that could give rise to an inference that religion was a motivating factor for not promoting the plaintiff. *See Syeed*, 568 F. Supp. 3d at 321. The complaint does not come close to satisfying this pleading standard, particularly because plaintiff was in fact promoted as soon as he returned from furlough, thereby dispelling any plausible inference that the prior denial had anything whatsoever to do with his religion.

**2. Plaintiff Has Not Plausibly Alleged a Claim for Disparate Pay**

Plaintiff also claims that his raise upon being promoted in September 2021 was lower than it should have been, which he asserts—without any factual support—must be attributed to his religion. *See* Compl. ¶¶ 44, 57. In *Wilson v. JPMorgan Chase Bank, N.A.,* 2021 WL 918770, at *6 (S.D.N.Y. Mar. 10, 2021), the court dismissed a similar NYCHRL pay claim alleging that plaintiff "was subjected to race discrimination in light of her less experienced non-African American colleagues receiving higher pay, promotions and other opportunities." The court stated that the complaint failed to allege what the responsibilities or credentials of her

[4] The pleading requirements for a promotion claim are materially the same under the NYSHRL/Title VII standard and the NYCHRL standard. "Courts have yet to establish a test for analyzing failure to promote claims under the NYCHRL" and have used the Title VII framework as a guide, "while bearing in mind the more liberal standards of the NYCHRL." *Syeed v. Bloomberg L.P.*, 568 F. Supp. 3d 314, 321 (S.D.N.Y. 2021).

comparators were, concluding that the plaintiff did not "plead any facts suggesting the basis for believing that any of her non-African-American colleagues received higher pay." *Id*.

Plaintiff's allegations are even more deficient than those alleged by the plaintiff in *Wilson*. While plaintiff claims that his salary was "well below the parity range between same-level Managers at [Disney's Theater Group]" (Compl. ¶ 44), he does not provide any information on who these managers were, what their credentials or responsibilities were, what is meant by "same-level," whether they were not Jewish, or what their pay was compared to plaintiff's pay. The types of vague, conclusory allegations plaintiff has made here have been consistently held to be insufficient to show that an employee was paid a lower salary because of a protected characteristic. *See Richards v. Dep't of Education of City of New York*, 2022 WL 329226, at *20 (S.D.N.Y. Feb. 2, 2022) (concluding that bare allegation that employer treated plaintiff differently than colleagues was insufficient under the NYCHRL to establish an inference of discriminatory motive). No exception should be made here, particularly since plaintiff admits that a salary audit was done and that his salary was subsequently increased to an appropriate level, further weakening any conceivable inference of religious intent. Compl. ¶ 45.

### 3. Plaintiff Cannot Plausibly Allege That His Termination Was Related to a Stray Remark Made Nine Years Earlier

As a threshold matter, plaintiff does not allege in his first cause of action for religious discrimination under the NYCHRL that his termination was discriminatory, and in fact, nowhere does the word "termination" appear in that section of the complaint. *See*, *e.g.*, Compl. ¶ 57 (referring to the alleged failure to promote plaintiff and to lowering his raise punitively as the "actions" which were based on "religion discrimination"). Nonetheless, as discussed in Section I.A *supra*, the complaint in this case lacks the specificity to plausibly allege that defendants acted with a discriminatory motive. It is therefore not possible for plaintiff to make the required

showing under the NYCHRL that he was wrongfully terminated, which requires plausible allegations that defendants acted with religious animus. Putting aside that the one stray remark made in 2014 is no indication of discriminatory intent as a matter of law, plaintiff has not alleged that it was made by the same person who terminated him. Nor can he because Varin had transferred out of the Theatrical Group years earlier (Compl. ¶ 7), which is why he merely points to amorphous "Disney leadership" who allegedly resented him (*id*. ¶ 49). These vague allegations fall woefully short of the *Twombly* and *Iqbal* standards to support an inference that plaintiff was terminated because of his religion. *See Silverman v. City of New York*, 216 F. Supp. 2d 108, 118 (E.D.N.Y. 2002), *aff'd*, 64 F. App'x 799 (2d Cir. 2003) (finding allegations of discriminatory bias by non-decisionmakers were insufficient to establish discriminatory animus).

## II. PLAINTIFF HAS NOT ALLEGED A PLAUSIBLE CLAIM OF RETALIATION

To state a claim of retaliation under the NYCHRL, plaintiff must plausibly allege that he complained about an activity prohibited by the anti-discrimination laws and that, as a result, the employer engaged in conduct that was reasonably likely to deter a person from engaging in such action. *Mihalik*, 715 F.3d at 112.[5] A plaintiff must plausibly allege *each* of these three requirements: protected activity, causation, and conduct likely to deter an employee from complaining. If the complaint fails to satisfy any of these requirements, the retaliation claim should be dismissed. In this case, plaintiff's complaint fails to satisfy the "protected activity" and "causation" requirements, either of which entitles defendants to dismissal of the claim.

First, plaintiff has failed to plausibly allege that he complained about illegal activity.

---

[5] These three requirements closely align with the Title VII retaliation standard, which requires a complaint about conduct prohibited by law, causation, and a materially adverse action that would "dissuade a reasonable employee from making or supporting a charge of discrimination." *Shultz v. Congregation Shearith Israel of City of New York*, 867 F.3d 298, 309 (2d Cir. 2017) (internal citations and quotation marks omitted).

Without these allegations, he cannot "meet his burden to sustain his retaliation claim." *Fattoruso v. Hilton Grand Vacations Co.*, 873 F. Supp. 2d 569, 581-82 (S.D.N.Y. 2012).

In *Fattoruso*, the court emphasized that the protected activity required for a retaliation claim under the NYCHRL must be a complaint about "an activity prohibited by law." *Id.* The court in that case granted the motion to dismiss because plaintiff did not explain to those "to whom he complained that he was taking umbrage with what he perceived to be *illegal* activity." *Id.* (emphasis in original). The same result is warranted here. Plaintiff's retaliation claim relies on a single communication he had with an individual in Employee Relations on April 16, 2020. However, a single stray comment about an offensive joke, which is the only specific factual detail Plaintiff includes about his April 2020 conversation with Employee Relations, does not constitute illegal activity. *Id.* ¶ 29.

Second, even if the April 16, 2020 communication is considered protected activity, plaintiff fails to establish the causation element of his retaliation claim. Plaintiff alleges that defendants retaliated against him by "lowering his raise, and then permitting false accusations against [him] while terminating him." *Id.* ¶ 64. Given these allegations, the supposed protected activity occurred nearly a year-and-a-half before his raise was allegedly lowered in September 2021 (*id.* ¶ 44) and more than three years before his termination on September 5, 2023 (*id.* ¶ 49). To support a causal connection between the protected activity and an adverse employment action, "courts 'uniformly hold that the temporal proximity must be very close [in time].'" *Paupaw-Myrie v. Mount Vernon City Sch. Dist.*, 653 F. Supp. 3d 80, 104 (S.D.N.Y. 2023) (citing *Clark Cnty. Sch. Dist. v. Breeden*, 532 U.S. 268, 273-74 (2001)). "While there is no bright line to define the outer limits beyond which a temporal relationship is too attenuated to establish a causal relationship, district courts in this Circuit have consistently held that a passage of more than two months between the protected activity and the adverse employment action does not

allow for an inference of causation." *Vinokur v. Sovereign Bank*, 701 F. Supp. 2d 276, 296 (E.D.N.Y. 2010) (internal quotation marks omitted); *Dixon v. Int'l Fed'n of Accountants*, 416 F. App'x 107, 110 (2d Cir. 2011) (finding that the passage of four months between complaint and termination was insufficient, standing alone, to establish a causal connection for purposes of plaintiff's retaliation claim); *Smith v. New York & Presbyterian Hosp.*, 440 F. Supp. 3d 303, 343 (S.D.N.Y. 2020) (concluding that a three and four-month gap between a complaint and an employer's alleged retaliatory act is insufficient to establish causation). The temporal gap here is a second and independent reason why plaintiff fails to plausibly allege a claim of retaliation.

## III. THE COURT SHOULD DISMISS THE WALT DISNEY COMPANY BECAUSE IT DOES NOT HAVE "A SINGLE EMPLOYER" RELATIONSHIP WITH THE THEATRICAL GROUP THAT EMPLOYED PLAINTIFF

Plaintiff alleges that he reported to the Theatrical Group's Director of Labor Relations and that this group "operates Broadway theater shows owned by The Walt Disney Company." Compl. ¶¶ 17, 19. Other than alleging, in conclusory fashion, that he was employed by both the Theatrical Group and The Walt Disney Company ("TWDC") at the same time (*id.* ¶ 14), he does not allege any facts which would demonstrate that these two entities are a single employer. In fact, plaintiff's allegations of discrimination and retaliation are directed at employees of the Theatrical Group, not TWDC. *Id.* ¶¶ 6, 7, 49. All of this explains why plaintiff's Prayer for Relief only seeks damages against the Theatrical Group. *See* Compl. at 14 ("Plaintiff Jonathan Farber demands judgment against Defendants Disney Theatrical Group and John/Jane Does 1-5 and Doe Corporations 1-5 as follows . . .").

In any event, the "single employer" doctrine is one of two "recognized doctrines that enable an employee in certain circumstances to assert employer liability against an entity that is not formally his or her employer." *Arculeo v. On-Site Sales & Mktg., LLC*, 425 F.3d 193, 197

(2d Cir. 2005).[6] In applying this doctrine, the essential question is whether the separate, related entity made the final employment decisions involving the person claiming discrimination. *Brown v. Daikin Am. Inc*., 756 F.3d 219, 227 (2d Cir. 2014). "This Circuit examines four factors in order to assess whether two nominally distinct entities are actually a single employer: '(1) interrelation of operations, (2) centralized control of labor relations, (3) common management, and (4) common ownership or financial control.' 'Although no one factor is determinative[,] *control of labor relations is the central concern.*'" *Shiflett v. Scores Holding Co.*, 601 F. App'x 28, 30 (2d Cir. 2015) (emphasis added) (internal citations omitted). "In determining whether a plaintiff adequately alleges centralized control over labor relations—the most important prong in the four-part test—the central question is *what entity made the final decisions regarding employment matters related to the person claiming discrimination*." *Brown*, 756 F.3d at 227 (emphasis added) (internal quotation marks omitted).[7]

Here, plaintiff does not allege any facts to support the four factors of the single employer test. Nor does he allege that TWDC made the final decisions to promote him, determine his pay, or terminate him. That is because he has already alleged that these employment decisions were made by employees of the Theatrical Group, which is a separate and distinct entity. Given that

[6] This doctrine has consistently been applied by district courts in this Circuit to the NYCHRL. *See*, *e.g.*, *Rahman v. Limani 51, LLC*, 2022 WL 3927814, at *6 (S.D.N.Y. Aug. 31, 2022).

[7] In *Weiss v. Starr Rest. Org., LP*, 2021 WL 3099895, at *5 (S.D.N.Y. July 21, 2021), the plaintiff alleged that his employer and its parent company were a single employer because there was a single human resources department and the parent company exercised vast control over the policies and practices of its subsidiaries. In granting defendant's motion to dismiss the parent company, the *Weiss* court found these allegations insufficient to establish centralized control over labor relations because "[a] common benefits package speaks only to economies of scale and not to centralized control of labor relations and the fact that a subsidiary adopted policies promulgated by its parent is insufficient to show that the parent exercised centralized control over the subsidiary's employees." *Id.* at *6 (internal quotation marks omitted).

plaintiff has failed to plausibly allege that the Theatrical Group and TWDC are a single integrated enterprise, his claims against TWDC should be dismissed.

## **CONCLUSION**

For all the foregoing reasons, defendants respectfully request that the Court grant their motion to dismiss in its entirety.

Dated: New York, New York
April 24, 2024

Respectfully Submitted,

McDERMOTT WILL & EMERY LLP

By: */s/ Kerry Alan Scanlon*

Kerry Alan Scanlon (admitted *pro hac vice*)
David Beach
500 North Capitol Street, N.W.
Washington, D.C. 20001
Telephone: (202) 756-8696
Facsimile: (202) 591-2791
kscanlon@mwe.com
dbeach@mwe.com

*Attorneys for Defendants*