UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

JONATHAN FARBER,

                      Plaintiff,

-against-

THE WALT DISNEY COMPANY et al.,

                      Defendants.

24-cv-391 (AS)

OPINION & ORDER

ARUN SUBRAMANIAN, United States District Judge:

      Plaintiff Jonathan Farber sued Defendants The Walt Disney Company (WDC) and Buena Vista Theatrical Group Ltd. (Theatrical Group) for religious discrimination and retaliation under the New York City Human Rights Law (NYCHRL). Defendants move to dismiss.

      Farber alleges that on July 26, 2014, Theatrical Group's Director of Human Resources, Marie-Pierre Varin, retweeted "Why does 'Jesus save'? Cuz he's a Jew and loves coupons ;)." Compl. ¶ 3, Dkt. 1. In August 2017, Farber started working for Theatrical Group. ¶ 18. In 2020, Farber says that Varin played a "meaningful role" in passing him over for a promotion. ¶¶ 24, 26. Farber was also part of the first group of employees furloughed due to the COVID-19 pandemic. ¶¶ 25–26. On April 16, 2020, Farber filed a complaint about Varin's tweet, which was escalated to senior management at WDC. ¶¶ 28–30. Farber was told that management would not be able to speak with him about the complaint until his furlough was over. ¶ 30. Farber says this deviated from how management handled other complaints (though he doesn't say that complaints by non-Jewish employees were handled differently). ¶ 31. When Farber's furlough ended in June 2021, he was told that management did not find evidence of antisemitism or bias against him and that several senior executives said they did not have issues with what Varin said or did. ¶¶ 36, 38.

      At that point, Farber tried to internally transfer to a new position, but another candidate was selected. ¶ 40. Farber wasn't offered an interview for the position, which Farber says was unusual (although, again, Farber doesn't say that similarly situated non-Jewish employees were treated differently). ¶ 41. Later in 2021, Farber was offered a promotion, but with a salary that was substantially less than what it should have been—a problem that took nearly 8 months and substantial effort by Farber to correct. ¶¶ 43–45. The employee who audited Farber's salary said something "highly fishy" had happened, and Farber was told by another supervisor that Varin was responsible for lowering his salary because she wanted to punish him for his complaints. ¶¶ 46–47. Farber was terminated on September 23, 2023, based on allegations that Farber says were a "complete lie." ¶ 49. He was then put on the "Do Not Admit" lists for Defendants' Broadway shows. ¶ 50.

I. **Religious Discrimination**

Defendants first move to dismiss Farber's discrimination claim. The Court agrees that this claim should be dismissed. To state a claim under the NYCHRL, a "plaintiff need only show differential treatment—that she is treated less well—because of a discriminatory intent." *Mihalik v. Credit Agricole Cheuvreux N. Am., Inc.*, 715 F.3d 102, 110 (2d Cir. 2013) (internal quotation marks omitted). Farber points to differential treatment including being denied a transfer in 2021, being given the wrong salary for his promotion, and then being terminated based on false pretenses.[1] But Farber hasn't linked this treatment to religious discrimination.

Farber first points to Varin's 2014 retweet. But there is a 6-year gap between this retweet and any employment actions against Farber. Plus, there are no allegations that Varin discriminated against Farber before 2020, even though Farber started working at the Theatrical Group in 2017 and Varin's retweet was in 2014. *See Moore v. Verizon*, 2016 WL 825001, at *9 (S.D.N.Y. Feb. 5, 2016) (dismissing NYCHRL claim when "Dixon's alleged remarks regarding Plaintiff's age occurred at least months before Plaintiff's first suspension and nearly a year prior to her termination, and they are not alleged to have arisen in a context at all related to the decision to suspend and later terminate Plaintiff.").

Farber next points to the fact that his supervisor told him that Varin lowered Farber's salary to punish him for his complaints against her. And Farber also says that he was terminated shortly after the departure of his manager (who had "openly protected him from the retaliation he endured from Varin and her cohorts") because Defendants' "leadership resented Farber for the complaint lodged against Varin." ¶¶ 48, 49. But these allegations suggest that Farber was treated "less well" because of his complaint, not because of his religion. So while they support his retaliation claim, these allegations don't suggest religious discrimination. There is simply nothing in the complaint that shows that any unfavorable treatment was motivated by religious discrimination.

Farber also says Defendants violated the NYCHRL because senior executives said they had no issues with what Varin said or did. But these comments were made in a meeting to explain to Farber why the investigation into Varin had ended: there was no evidence of antisemitism or bias against Farber. In this context, Defendants' comments were clearly meant to communicate that Varin's promotion decisions had not violated any of Defendants' policies. The allegations do not suggest that Defendants were celebrating (or even condoning) Varin's 2014 tweet. Nor does the decision not to punish Varin for her 6-year-old retweet (which Defendants found did not influence any subsequent conduct) somehow independently violate the NYCHRL.

Since Farber doesn't connect any discriminatory treatment to his protected religious status, his discrimination claim is dismissed.

---

[1] The 2020 promotion and furlough fall outside the NYCHRL three-year statute of limitations. *See* N.Y.C. Code § 8-502(d). So the Court may consider these events only to the extent that they are relevant to events during the limitations period. *Hernandez v. City of New York*, 2019 WL 2410129, at *7 (S.D.N.Y. June 7, 2019).

II.  **Retaliation**

As to retaliation, Defendants' motion to dismiss is denied. Farber alleges unfavorable treatment by Defendants that took place after he filed a complaint of religious discrimination. For example, within a few months after Farber returned from furlough, he was summarily denied a transfer and was erroneously underpaid for a new position.[2] Farber says both actions deviated from standard protocol. Plus, according to the complaint, Farber's manager said Varin lowered his salary in retaliation for Farber's complaint. At this stage, Farber's allegations are sufficient to make out a retaliation claim under the NYCHRL.

Defendants say that Farber "has failed to plausibly allege that he complained about illegal activity." Dkt. 21 at 9. But Defendants don't explain how a written complaint to management about what Farber thought was religious discrimination would fall outside the NYCHRL's protections.

III.  **Single Employer**

Finally, Defendants say that claims against WDC should be dismissed because Farber was employed by the Theatrical Group (a wholly-owned subsidiary of WDC). "The Second Circuit has adopted a widely used four-part test to determine whether a parent and subsidiary constitute a single employer. It examines evidence of '(1) interrelation of operations, (2) centralized control of labor relations, (3) common management, and (4) common ownership or financial control.' Of these factors, the most 'critical' is the second: centralized control of labor. Indeed, the Circuit has stated that 'the critical question to be answered then is: What entity made the final decisions regarding employment matters related to the person claiming discrimination?'" *McHenry v. Fox News Network, LLC*, 510 F. Supp. 3d 51, 81 (S.D.N.Y. 2020) (quoting *Cook v. Arrowsmith Shelburne, Inc.*, 69 F.3d 1235, 1240–41 (2d Cir. 1995)).

Here, Farber's allegations raise a question of fact as to whether WDC and the Theatrical Group operate as a single employer. For example, Farber alleges that WDC took over his complaint against Varin and the subsequent investigation. Compl. ¶¶ 30, 33–39. Farber also alleges that Varin was promoted to a role with one of WDC's other subsidiaries sometime between March 2020 and June 2021. ¶ 32. Yet Varin still allegedly exercised control over Farber's salary. ¶¶ 43–47.

"[A]t this early stage in the litigation, the control that [Farber] alleged [WDC] to have exercised over [the Theatrical Group's] employment actions—lying at the core of [Farber's] charges of discrimination—is adequate to sustain the action against [WDC]." *Brown v. Daikin Am. Inc.*, 756 F.3d 219, 228 (2d Cir. 2014). Defendants may renew this argument at summary judgment, when the issues of fact as to WDC and the Theatrical Group's relationship have been fully aired.

## CONCLUSION

Defendants' motion to dismiss is granted with respect to Farber's claim for religious discrimination but denied with respect to Farber's claim for retaliation. If Farber wishes to file an

---

[2] Defendants argue that these events took place over a year after Farber filed his complaint. Dkt. 21 at 10. But Farber was furloughed for most of that period.

amended complaint to attempt to revive his discrimination claim, he should do so no later than **August 30, 2024**.

Defendants' request to stay discovery pending the Court's decision is denied as moot. The Court notes that this motion to stay came over *three months* after the Court entered a Scheduling Order, which adopted the deadlines that the parties proposed, and which did not stay discovery. Dkt. 25. Discovery is set to be completed by December 8, 2024, and the parties should work diligently to comply with this deadline.

The Clerk of Court is directed to terminate Dkts. 20 and 28.

SO ORDERED.

Dated: August 20, 2024
New York, New York

ARUN SUBRAMANIAN
United States District Judge