**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

JONATHAN FARBER,

Plaintiff,

v.

THE WALT DISNEY COMPANY, *et al*.,

Defendants.

Case No.: 1:24-cv-00391-AS

**REPLY MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**

ORAL ARGUMENT REQUESTED

**McDERMOTT WILL & EMERY LLP**

Kerry Alan Scanlon (admitted *pro hac vice*)
David Beach
500 North Capitol Street, N.W.
Washington, DC 20001
Tel: (202) 756-8696

Dated: May 16, 2025

*Attorneys for Defendants*

# TABLE OF CONTENTS

**Page**

PRELIMINARY STATEMENT .......... 1

ARGUMENT .......... 2

I. DEFENDANTS ARE ENTITLED TO SUMMARY JUDGMENT .......... 2

A. The Undisputed Evidence Demonstrates That the Decision Not to Advance Plaintiff to the Final Domestic Touring Interview Was Not Retaliatory .......... 2

B. Plaintiff Cannot Establish Retaliatory Pretext for the Decision to Set His Salary at $85,000 .......... 5

C. Plaintiff Cannot Establish Causation for His Retaliatory Termination Claim .......... 8

II. TWDC AND THEATRICAL GROUP ARE NOT A SINGLE EMPLOYER .......... 10

CONCLUSION .......... 11

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*In re Dana Corp.*,
574 F.3d 129 (2d Cir. 2009)....................9

*Dixon v. Int'l Fed'n of Accountants*,
416 F. App'x 107 (2d Cir. 2011) ....................8

*Downey v. Adloox Inc.*,
2018 WL 5266875 (S.D.N.Y. Oct. 23, 2018), *aff'd*, 789 F. App'x 903 (2d Cir. 2019) ....................9

*Gottlieb v. Cnty. of Orange*,
84 F.3d 511 (2d Cir. 1996)....................9

*Knight v. Ent. Publications, Inc.*,
1996 WL 172138 (N.D. Ill. Apr. 10, 1996) ....................10

*Menos v. Uncle Nearest, Inc.*,
2025 WL 917347 (E.D.N.Y. Mar. 25, 2025)....................8, 9

*Moy v. Perez*,
712 F. App'x 38 (2d Cir. 2017) ....................8

*Passmore v. Mapco Express, Inc.*,
447 F. Supp. 3d 654 (M.D. Tenn. 2017)....................10, 11

*Sattar v. Johnson*,
129 F. Supp. 3d 123 (S.D.N.Y. 2015), *aff'd*, 669 F. App'x 1 (2d Cir. 2016)....................3

*Seabrook v. New York City Health & Hosps. Corp.*,
2015 WL 273652 (S.D.N.Y. Jan. 20, 2015) ....................9

*Tsaganea v. City Univ. of New York, Baruch Coll.*,
441 Fed. Appx. 12 (2d Cir. 2011)....................2

*United States v. New York City Dep't of Educ.*,
407 F. Supp. 3d 365 (S.D.N.Y. 2018)....................4

*Vega v. Hempstead Union Free Sch. Dist.*,
801 F.3d 72 (2d Cir. 2015)....................8

## PRELIMINARY STATEMENT

Plaintiff concedes in his opposition that he consistently said "no" when asked in his deposition if he had *any* facts to support his contention that Marie-Pierre Varin or her professed allies retaliated against him. Plaintiff nevertheless argues that defendants' motion should be denied because a reasonable jury "could choose not to believe" defendants' undisputed evidence based solely on his conjecture and speculation. According to plaintiff, the twelve sworn declarations defendants submitted in support of their motion from individuals who were directly involved in the relevant events are "tainted" because the declarants are current employees and "want to keep their job."[1] But, plaintiff offers no evidence that any of these witnesses would make false statements under oath to keep their job.

Because plaintiff's evidence is limited to unproven conjecture, supposition, and assumptions rather than facts capable of creating a genuine dispute, defendants are entitled to summary judgment and this case should never reach a jury. For each of the allegedly retaliatory employment actions—including the Domestic Touring position, the salary increase after Farber was promoted to Manager of Labor Relations, and his termination—defendant Buena Vista Theatrical Group Ltd. d/b/a Disney Theatrical Group ("Theatrical Group") has shown it had legitimate, non-retaliatory reasons for its actions. Try as he may, plaintiff has failed to present any evidence that those reasons are a pretext for retaliation and this Court should now dismiss the remaining retaliation claim and enter final judgment for the defendants.

---

[1] Courts routinely rely on employee declarations in support of an employer's motion for summary judgment.

# ARGUMENT

## I. DEFENDANTS ARE ENTITLED TO SUMMARY JUDGMENT

### A. The Undisputed Evidence Demonstrates That the Decision Not to Advance Plaintiff to the Final Domestic Touring Interview Was Not Retaliatory

In their moving papers, defendants established that plaintiff did not advance to the final round of interviews with Eldon, the last—but not only—decisionmaker for the Domestic Touring position, for two reasons. First, Buchanan, the hiring manager, and Eldon, the Domestic Touring department head, decided that plaintiff was not as qualified as the three individuals who did advance to the final round. DSOF ¶¶ 21-22.[2] And second, Buchanan and Eldon decided that plaintiff's negative attitude and penchant for gossip would not represent Theatrical Group well in its dealings with third parties. *Id.* ¶ 19.[3] Defendants further established that its business reasons for not advancing plaintiff to the final round could not be retaliatory because neither Buchanan nor Eldon knew or even had an inkling that plaintiff had complained about Varin.

In his opposition, plaintiff does not address, much less dispute, the qualifications required for the position, his work experience, or the qualifications of the final three candidates Eldon did interview.[4] Instead, he contends, without factual support, that "a reasonable jury could find that

---

[2] To discredit Christopher Nunez's statement, plaintiff contends that Nunez is a current employee and therefore biased. Pl.'s Resp. to DSOF ¶ 25. Nunez's employment status is irrelevant to whether the Court can consider his declaration on this motion. And, Nunez relocated to Michigan in July 2024 and no longer works for Theatrical Group. DSOF, Ex. 18 ¶ 8.

[3] It is well-settled that being less qualified for a position than other candidates is a legitimate non-retaliatory reason for not getting hired. *See* Defs.' Mem. at 8-11. Plaintiff ignores all but one of these decisions, and the one he does address, *Tsaganea v. City Univ. of New York, Baruch Coll.*, 441 Fed. Appx. 12, 14 (2d Cir. 2011), is not distinguishable. Here, as in *Tsaganea*, plaintiff has no evidence that Theatrical Group's non-retaliatory reason is pretextual.

[4] Plaintiff's only response is that the question of who is the more qualified candidate is for the jury. The issue here is not whether Buchanan and Eldon's determination was incorrect but rather whether plaintiff has come forward with any evidence that Buchanan and Eldon's statements are

Farber should have interviewed with Eldon." Doc. 60, Pl.'s Opp. ("Opp.") at 13. Plaintiff's unsupported belief is not a substitute for facts that establish Theatrical Group was not obligated to interview him, and its decision not to do so was not pretextual. As the nonmoving party, plaintiff was required to "come forward with specific facts" in dispute and not unsubstantiated speculation. *Sattar v. Johnson*, 129 F. Supp. 3d 123, 136 (S.D.N.Y. 2015), *aff'd*, 669 F. App'x 1 (2d Cir. 2016).

Plaintiff cannot show that Theatrical Group deviated from any established policy when it interviewed him twice but did not advance him to the final round. First, plaintiff admitted there was no "formal" policy requiring that internal candidates be interviewed. DSOF ¶ 27. Second, other than referencing some vague "understanding," plaintiff adduces no other evidence of a policy that a decisionmaker is required to interview an internal candidate after deciding that other candidates are better suited for the position. *Id*. Plaintiff's "understanding" that he was entitled to an interview is unsubstantiated speculation and insufficient to raise an issue of fact about the existence of any such policy or that Theatrical Group violated it, particularly given that plaintiff was interviewed twice. DSOF ¶ 27; DSOF, Ex. 3, Kardel Tr. 47:22-25; *Sattar*, 129 F. Supp. 3d at 136.[5]

Equally unavailing is Plaintiff's contention that the statement "very poor candidate experience" is evidence of pretext. Plaintiff argues that statement means that he did not advance because Theatrical Group did not want to "elevate" him after his Varin complaint. But, plaintiff failed to provide the context of this statement and instead plucked half of a statement from the

---

false and misleading. Since plaintiff has not come forward with even a scintilla of such evidence, this issue never reaches a jury.

[5] And there is no merit to plaintiff's suggestion that Buchanan's statements that another internal candidate did not advance to the final round does not constitute evidence. DSOF ¶ 27.

recruiter Linda Mundt's notes. The note actually says: "[Buchanan] said he hadn't gotten back to [plaintiff] yet – very poor candidate experience. But he didn't – it fell off his radar. People avoid difficult conversations." DSOF, Ex. 15 at 1. On its face, Mundt's statement says only that Buchanan created a negative interview experience for plaintiff when he failed to promptly advise him of their decision. Mundt's statement does not plausibly relate to plaintiff's complaint or to the reasons Farber did not advance in the interview process.[6]

Likewise, Vaughan's decision to tell Employee Relations about plaintiff's concern (and hers) that Eldon retaliated against him does not raise a genuine issue of material fact about Eldon's knowledge of plaintiff's complaint or the reason Eldon decided not to interview him. First, as plaintiff concedes, Vaughan testified that she "had no information," did not know who made the final determination for the position, did not know why Eldon had not interviewed Farber, and did not know the qualifications of the other candidates who were interviewed for the position. Pl.'s Resp. to DSOF ¶ 34. Second, Vaughan reported plaintiff's concern because, as plaintiff admits, it was her job. It is a bridge too far to conclude that Eldon and Buchanan's explanation for why plaintiff did not advance is pretextual simply because Vaughan discharged her duties as an HR professional. And third, Employee Relation's investigation of the facts Vaughan did not have and its finding that there was no retaliation, belies any suggestion that Vaughan's actions are sufficient to send this case to a jury. DSOF ¶ 36.

Finally, someone else's "belief" or plaintiff's own unsupported presumption are insufficient to raise a genuine issue of fact about whether Eldon knew about plaintiff's complaint when Eldon denies such knowledge. *United States v. New York City Dep't of Educ.*, 407 F.

[6] Plaintiff's suggestion that "there must have been an issue with Farber as it relates to upper management" (Opp. at 5) because a recruiter was concerned about the interview process is rank speculation. Speculation cannot raise a genuine issue of material fact.

Supp. 3d 365, 405 (S.D.N.Y. 2018). Plaintiff offers no sworn statement or documentary evidence (i) identifying the meeting where the complaint was purportedly discussed, (ii) confirming that Eldon attended, or (iii) showing that Varin told Eldon about the complaint because they were friends.

### B. Plaintiff Cannot Establish Retaliatory Pretext for the Decision to Set His Salary at $85,000

It is undisputed that the initial $95,000 recommendation from Jasmine Rosser, a Manager at Studio's Compensation Group, for plaintiff's new labor relations role[7] was based on her review of (i) the salaries of a *higher-level* Labor Relations position at Theatrical Group and a Labor Relations Administrator at Studios and (ii) salary data for all industries. DSOF ¶ 41.

The record further establishes that Andrew Flatt, Theatrical Group's managing director, initiated internal discussions about the Compensation Group's original recommendation because it was too high. Flatt and other executives explained that: (i) Theatrical Group was facing significant financial constraints due to Broadway's 16-month pandemic closure; (ii) salaries in the live-entertainment industry are lower than comparable roles in other Disney affiliates; (iii) the $95,000 was too high relative to other Theatrical Group employees; and (iv) Farber's work performance did not meet all expectations. *Id.* ¶¶ 42-45. Accordingly, the executives decided that $85,000 was the more appropriate salary. *Id.* ¶ 45.

The two separate business units—the Compensation Group at The Walt Disney Studios ("Studios") and the Theatrical Group—then worked together to address Theatrical Group's financial concerns. The business units were able to agree that Farber's new salary would be

---

[7] Contrary to plaintiff's assertion, his promotion was not delayed once he returned from furlough. Scott Kardel, Farber's supervisor, completed a revised job description for the position on July 23, 2021. The promotion decision followed two-and-a-half weeks later on August 10, 2021.

$85,000, which was "middle of the pack" for P4 level Managers in the Theatrical Group. *Id.* ¶ 45. This 32% increase in compensation was made retroactive to the end of plaintiff's furlough on May 31, 2021. *Id.* ¶ 46.

Plaintiff admits that the Compensation Group "often" makes salary recommendations as a starting point, which are then adjusted up or down after discussions with business leaders. *Id.* ¶ 47.[8] Notwithstanding his admission that there was nothing unusual about the compensation process, plaintiff nevertheless contends that Theatrical Group was retaliating against him when it rejected the Compensation Group's initial recommendation. Plaintiff is wrong and has failed to adduce any specific factual evidence to support his contention that defendants' business justification is pretextual.

Plaintiff identifies four "facts" he claims demonstrate pre-text: (i) Kardel's statement that Varin thought the proposed compensation was "too high"; (ii) Varin's involvement in the 2021 compensation review and process; (iii) the Compensation Group's later decision to increase his compensation; and (iv) Flatt's response to the subsequent compensation increase. The undisputed record belies each contention.

First, Kardel never testified that Varin commented on plaintiff's compensation after the protected activity in 2020. Opp. at 3, 16. He testified that the conversation was pre-pandemic and pre-protected activity. DSOF, Ex. 3, Kardel Tr. 22:1-18 ("We were at the beginning of the pandemic year . . . Marie-Pierre was the director of HR at that time [and] she said at that time, no, it's too high."). And he testified that he did not know whether Varin "had any involvement

[8] Theatrical Group frequently rejects initial salary recommendations from the Compensation Group to ensure consistent compensation across the company. DSOF ¶ 43.

in the decision of when to promote [plaintiff] in 2021 or how much to pay him." *Id.* at 107:14-18.

Second, Varin also testified that she "did not want to be involved in conversations that would directly impact [plaintiff's] career at [Theatrical Group], because [she] felt it wouldn't be appropriate considering that there had been the complaint." DSOF ¶ 58. Flatt's 2021 email copying Varin and asking for a meeting to discuss the compensation recommendation is insufficient to raise an issue of fact about whether Varin participated in that process. Plaintiff has not proffered a shred of evidence that the meeting ever occurred or that, if it did, Varin attended.[9]

Third, the Compensation Group's decision to increase plaintiff's compensation to $105,000 in response to his complaint is not evidence that the initial decision was wrong or retaliatory. Shawn Bacon, the Vice President of Compensation at Studios, decided, without consulting Theatrical Group, that Farber's salary as Manager of Labor Relations should be $105,000 because Farber had assumed some of the duties of the previous *Senior Manager* of Labor Relations. *Id.* ¶¶ 54, 56.

Fourth, Flatt was understandably frustrated that the Compensation Group unilaterally decided to increase Theatrical Group's operating costs without discussing it with him first. Flatt confirmed that the frustration he expressed in the email on which plaintiff relies was with the process and not with the salary review or the increased compensation. DSOF, Ex. 9, Flatt Decl.

---

[9] In any event, Varin's involvement would not negate Theatrical Group's legitimate business reason for rejecting Studio's Compensation Group $95,000 recommendation; Farber admits that happens "often" in the give-and-take between the Compensation Group and Theatrical Group. *Id.* ¶ 47.

¶ 11. Nothing in Bacon's decision or Flatt's frustration with it establishes that plaintiff's complaint against Varin influenced either of them.

In sum, the record confirms that plaintiff's compensation issues emanated from a disagreement between two business units that prioritized different business factors and reached different conclusions about the appropriate compensation for the Senior Manager role. That does not support plaintiff's retaliation claim. *See Moy v. Perez*, 712 F. App'x 38, 42 (2d Cir. 2017).

**C. Plaintiff Cannot Establish Causation for His Retaliatory Termination Claim**

Plaintiff does not dispute that the Second Circuit has consistently held that temporal gaps much shorter than two years are insufficient to establish causation for a retaliation claim. Defs.' Mem. at 19-20. Summary judgment should be granted on the termination claim on this basis alone. *See*, *e.g.*, *Dixon v. Int'l Fed'n of Accountants*, 416 F. App'x 107, 110 (2d Cir. 2011).[10]

To save his claim, plaintiff speciously argues that employees were eager to find a reason to terminate him because his compensation was increased after the review. Opp. at 20. As noted above, Flatt's frustration stemmed solely from the lack of communication and collaboration between the two business units and had nothing to do with plaintiff, the compensation review or his ultimate compensation. *See* Ex. 34, 38; DSOF, Ex. 9, Flatt Decl. ¶ 11.

Plaintiff's reliance on *Menos v. Uncle Nearest, Inc.*, 2025 WL 917347, at *15 (E.D.N.Y. Mar. 25, 2025), is misplaced. There, the court found temporal proximity and direct evidence of retaliatory animus because following her complaint of sexual harassment, plaintiff "was isolated from the rest of the company," was prevented from attending events, and told not to have

---

[10] Plaintiff cites *Vega v. Hempstead Union Free Sch. Dist.*, 801 F.3d 72 (2d Cir. 2015) to argue that this temporal gap does not matter because defendants' actions "paint a mosaic of retaliation." Opp. at 18. This argument is factually unsupported and *Vega* is inapposite. There, the court recognized that each retaliatory action "closely followed protected activity by Vega" (i.e., a couple of months, not years). 801 F.3d at 92. That is not the case here.

communications with co-workers she had previously spoken to on a regular basis due to liability reasons. *Id*. In contrast, plaintiff could not identify a single fact to support his allegation that Disney's executive leadership "resented Farber" for filing a complaint against Varin over three years earlier. DSOF ¶ 92.

Theatrical Group's termination of Farber stands on solid legal grounds. First, courts routinely rely on employee declarations in support of summary judgment. *Downey v. Adloox Inc*., 2018 WL 5266875, at *2, n.2 (S.D.N.Y. Oct. 23, 2018), *aff'd*, 789 F. App'x 903 (2d Cir. 2019) (affidavits and declarations of defendant's employees are not disregarded "merely because they are interested parties"); *Gottlieb v. Cnty. of Orange*, 84 F.3d 511, 518 (2d Cir. 1996) (nonmoving party cannot defeat summary judgment by relying "on mere assertions that affidavits supporting the motion are not credible"). Second, the Broadway League employee's statements about what plaintiff said are not hearsay. Those statements are not offered for the truth of the matter asserted; they show the Theatrical Group's state of mind when recommending plaintiff's termination. *Seabrook v. New York City Health & Hosps. Corp.*, 2015 WL 273652, at *1, n.2 (S.D.N.Y. Jan. 20, 2015) (statements documenting a plaintiff's employment history "are admissible as being offered to show the state of mind of Defendant's representatives in making various employment decisions"). Finally, plaintiff did not move to strike the declarations and accordingly his evidentiary arguments should be rejected.

Likewise, there is no merit to plaintiff's argument that *In re Dana Corp*., 574 F.3d 129 (2d Cir. 2009) compels this Court to ignore Perry's "self-serving declaration" that his decision to include plaintiff in the "Do Not Admit" after he was terminated was based on prior practice at a previous employer (Opp. at 22). That court rejected three "self-serving" affidavits because the declarants, one of whom had previously submitted "perjured" testimony, were accused of conspiring to misappropriate trade secrets. *Id.* at 140, 153. Here, there is no evidence that Perry

is lying or had a motive to lie since, as plaintiff acknowledges, Perry barely knew him. Opp. at 22.

Finally, while plaintiff complains about evidentiary rules—which he fails to follow—he fails to rebut the findings from the investigation resulting in his termination.[11] Thus, there is no evidence in the record that Theatrical Group's decision to terminate him based on their investigation was a pretext for retaliation.

## II. TWDC AND THEATRICAL GROUP ARE NOT A SINGLE EMPLOYER

No employee of The Walt Disney Company ("TWDC") made any decision about plaintiff's employment, including the decisions he is challenging here. And, plaintiff's contention that different operating units of TWDC employed the individuals involved (Opp. at 24) does not satisfy the "single employer" doctrine because, among other things, the evidence confirms these operating units have a "corporate status separate and apart from TWDC." DSOF ¶ 98. Plaintiff reliance on the shared employee handbook is also misplaced because sharing employee policies is not enough to overcome the strong presumption that a parent company is not the employer of its subsidiary's employees. *Passmore v. Mapco Express, Inc.*, 447 F. Supp. 3d 654, 665 (M.D. Tenn. 2017) (common use of letterhead, logo, and employee handbook did not create a single employer relationship); *Knight v. Ent. Publications, Inc.*, 1996 WL 172138, at

[11] There is no merit to plaintiff's challenge to the propriety of the investigation of his first complaint because Employee Relations did not bring him back from furlough but brought another employee back for a different investigation. Opp. at 11-12. The Employee Relations investigator Marisa Dye exercised her business judgment and decided that plaintiff's detailed account of the alleged discriminatory incidents was sufficient for the investigation. DSOF, Ex. 4. Based on that investigation, which included other critical interviews, Dye found no evidence of discrimination, as did this Court when it dismissed that claim. *Id.* ¶ 10; Dkt. 29, Order. Defendants have explained the vastly different circumstances in the investigation of the actor's complaint against the director. Plaintiff's disagreement with Theatrical Group's decision is not evidence of impropriety in the investigation of plaintiff's complaint.

*2 (N.D. Ill. Apr. 10, 1996) (parent and subsidiary were not a single employer when they shared an employee handbook and certain employee benefits).

The individuals outside Theatrical Group involved in the challenged decisions were all employees of the Corporate operating unit or Studios. DSOF ¶¶ 6, 40, 54-55. And "The Walt Disney Company" appears in certain employees' signature lines merely for branding purposes and does mean they are a TWDC employee or demonstrate that TWDC was involved in these challenged employment decisions. *See Passmore*, 447 F. Supp. 3d at 665. Because plaintiff has failed to show that TWDC exercised any decision-making authority over plaintiff's employment, TWDC should be dismissed from this action.

## CONCLUSION

For all the foregoing reasons and those set forth in their previously-filed memorandum, the Court should grant defendants' motion for summary judgment.

Dated: New York, New York
May 16, 2025

Respectfully submitted,

McDERMOTT WILL & EMERY LLP

By: */s/ Kerry Alan Scanlon*
Kerry Alan Scanlon (admitted *pro hac vice*)
David Beach
500 North Capitol Street, N.W.
Washington, D.C. 20001
Telephone: (202) 756-8696
Facsimile: (202) 591-2791
kscanlon@mwe.com
dbeach@mwe.com

*Attorneys for Defendants*

## CERTIFICATE OF WORD COUNT

I hereby certify that this brief complies with Local Rule 7.1(c) and that the brief contains 3,316 words.

By: *___/s/ Kerry Alan Scanlon___*
Kerry Alan Scanlon